THE ELTING WOOLEN COMPANY *against* JOHN T. MARTIN.

Under an agreement for the manufacture and delivery of goods by the plaintiff, by which 40,000 yards of flannel were to be furnished each month, the plaintiff during the first month furnished only 25,000 yards: *Held*, that this was such a breach of the contract as entitled the defendant to rescind it, and refuse to receive any more goods, notwithstanding the plaintiff had offered to supply the deficiency by goods bought in the market, and had been excused by the defendant from doing so.

APPEAL from a judgment of this court entered by direction of the court at trial term, dismissing the complaint.

The action was brought to recover damages for the breach of a written agreement dated March 9th, 1875, by the terms of which The Elting Woolen Company agreed to deliver at the store of John T. Martin "two hundred and thirty thousand yards wool dyed indigo blue blouse flannels, to weigh not less than five and a quarter ounces per yard, and twenty-eight inches wide, full government standard goods, to be satisfactory to the said Martin as per two samples submitted. The first delivery is to be made on or before the 24th day of March, and not less than forty thousand yards are to be delivered each month thereafter until the contract is completed. And it is further agreed that the entire product of the company's mill from the 24th day of March is to be delivered upon this contract until the entire quantity is completed. It is agreed by the party of the second part that in consideration of the fulfillment of the above stipulations that the party of the first part shall be paid for each and every yard ninety-five cents, payable ninety days from date of delivery. The goods shall be examined within fifteen days from delivery. If The Elting Woolen Company fail to deliver the said goods up to contract, the said Martin has the right to purchase them on their account."

On the trial it appeared that during the first month for the performance of the contract (viz., from March 24th to April 24th), the plaintiff had tendered to the defendant only, 24,985½

yards of the goods called for by the contract, and that of those a large portion had been rejected by the defendant as not being up to the contract.

The failure of the plaintiff to deliver 40,000 yards during the first month was attempted to be excused by showing that on April 14th the agent of the plaintiff stated to the defendant that the plaintiff was likely to be short in that month's delivery, and was prepared to furnish the deficiency by buying goods in the market and delivering them to him, or would give him the privilege of buying the goods himself, by which he could save money (the market price of the goods being then less than the contract price). To this the defendant replied that he would furnish the deficiency himself.

At the end of the first month, defendant claimed that the plaintiff had failed to perform its part of the contract, and therefore elected to rescind it, and refused to receive any more goods.

On the trial the complaint was dismissed.

The plaintiff appealed.

*Augustus F. Smith*, for appellant.

*A. J. Vanderpoel*, for respondent.

ROBINSON, J.—The written contract upon which this action is brought was plainly one for the purchase by the defendant of 230,000 yards of flannel of a specified kind and quality, to be manufactured by the plaintiff (*Passaic Manufacturing Co. v. Hoffman*, 3 Daly, 495), and was not of such a mixed character, that if they failed thereafter to manufacture the goods called for by the contract, *they* might go into the market and procure others of a similar kind and quality to supply the deficiency. It suggested no such mere sale and purchase, but related to goods which plaintiff thus agreed to deliver the defendant out of the future products of their mill, to wit, "from the date of the contract at the rate of not less than 40,000 yards per month," until the entire quantity contracted for should be completed; and it provided that the entire product of

the mill from the 24th of March (the contract was dated the 9th) was to be delivered under the contract, until the entire quantity was completed; and if the mill or manufactory was destroyed by fire or otherwise, before the completion of the contract, the contract, as to the balance of the goods not delivered, was to be void. It also provided that if the plaintiff failed to deliver the goods " up to contract," defendant had the right to purchase them on their account.

Plaintiff's mill had a capacity of easily producing from 40,000 to 50,000 yards of flannel weekly, but instead of immediately proceeding to manufacture any flannel of the character called for by the contract, they retained the poor warps in their looms until the first of April. They made and tendered but 24,985½ yards during the first month (ending April 24th, 1865), but these was-rejected by the defendant as inferior to the requirements of the contract. Without regard to the merits of the controversy with reference to the quality of the goods then tendered, the omission of the plaintiff to produce or offer the balance of 15,000 yards required to be delivered prior to the 24th of April, is attempted to be excused by an alleged substituted agreement on the 10th of April, when, as claimed in complaint made by defendant as to the character of the goods tendered, the plaintiff's agent stated to him that they were prepared to furnish any deficiency in that month's delivery, as they had ascertained the goods could be obtained, but would give him the privilege of supplying himself, and he could save money by it, as the market price was less by ten cents per yard than he had agreed to pay; and that defendant said he would furnish the deficiency himself. On the 21st of April plaintiff tendered eleven other bales (containing 6,336 yards) which were also rejected without examination. Under these circumstances, the defendant, at the end of the first month (April 24th), refused to receive any more of the goods, and repudiated further performance of the contract, and, in my opinion, he was justified in so doing. The plaintiff plainly failed to comply with its prescribed terms, in neglecting to manufacture these particular goods for defendant, and deliver him such manufactured goods during the first month to the

extent of 40,000 yards. It rested in the option of the defendant, in case of their failure to comply with their contract, to go into the market and purchase such goods on their account, and by tendering him the election to do so, as they alleged was done on the 10th of April, they neither offered nor conceded to him any privilege which he did not already possess under the very terms of the agreement, so that even if he assented to their proposal, nothing was thereby yielded or conceded on their part which constituted a consideration for any modification of the contract. The right to go into the market and buy such goods on account of plaintiff, in case of breach of the contract by non-delivery of the article contracted for, was fully secured to him by the precise terms of the contract, and to do so, and buy on his own private account, was a right he possessed unabridged by any provision of the agreement in question.

Under these views, I am of the opinion the defendant was fully justified by the plaintiff's default in refusing any further obligation to the contract, and that the complaint was properly dismissed.

Judgment should be affirmed.

LARREMORE, J., concurred.

Judgment affirmed.